## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DENISE J. STREETER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **CIVIL ACTION** |
| v. | ) |
| | ) **No. 12-2741-JWL** |
| CAROLYN W. COLVIN,[1] | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

(hereinafter Commissioner) denying Supplemental Security Income (SSI) benefits under

sections 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 1381a, and

1382c(a)(3)(A) (hereinafter the Act).  Finding the final decision of the Commissioner

unreviewable, the court ORDERS that the decision shall be REVERSED and that

judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g)

REMANDING the case for further proceedings consistent with this opinion.

## I.    Background

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for Social Security Disability (SSD) benefits and SSI benefits,

alleging disability beginning July 1, 2005. (R. 16, 128-71). In due course, Plaintiff

appeared at an Administrative Law Judge (ALJ) hearing in which she withdrew her SSD

application and acknowledged that the current application rests on an SSI-only claim with

a filing date of November 23, 2009. (R. 35-36). After receiving an unfavorable ALJ

decision dated September 15, 2011 (R. 16-27), Plaintiff requested and was granted review

of that decision by the Appeals Council. (R. 8-12). The Appeals Council issued a

decision on September 22, 2012 which is the final decision of the Commissioner of Social

Security, and which is the subject of Plaintiff's complaint seeking judicial review in this

court. (R. 1-7); (Doc. 1).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052

(10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he

findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual

findings are supported by substantial evidence in the record and whether he applied the

correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than

a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind

might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971);

Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process--

determining at step four whether, in light of the RFC assessed, claimant can perform her

past relevant work; and at step five whether, when also considering the vocational factors

of age, education, and work experience, claimant is able to perform other work in the

economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084,

1088 (10th Cir. 1999).

Plaintiff claims the Appeals Council erred in relying on the Medical-Vocational

Guidelines (the grids) at step five of the sequential evaluation process; and that the ALJ

committed errors which were adopted by the Appeals Council when she erroneously

weighed the opinions of Plaintiff's social worker and of the physicians, when she failed to

include social limitations in the RFC assessed, when she failed to obtain a consultative

examination, and when she failed to perform a function-by-function assessment before

expressing Plaintiff's RFC in terms of medium work. The Commissioner argues that the

Appeals Council did not rely on the grids to direct a finding but used them as a

framework to make the alternative finding that a significant number of other jobs in the

economy are available to an individual with the limitations assessed for Plaintiff. She

also argues that the ALJ properly weighed the opinions of Plaintiff's social worker and of

the physicians, that there was no need to obtain another consultative examination, and

that the ALJ's RFC assessment provided the proper evaluation of Plaintiff's functional

abilities in finding that she is capable of medium level work.  The court finds merit in the

arguments presented by both parties, and finds that ambiguities in the final decision of the

Commissioner make the decision unreviewable and require remand for clarification and

proper explanation of the bases for the decision.  Because the case must be remanded, the

court sees no reason to address every issue presented in Plaintiff's briefs, and she may

reassert her arguments before the Commissioner on remand.

## II.    Analysis

As Plaintiff asserts, it is error for the Commissioner to rely upon the grids to direct

a finding where the claimant has non-exertional limitations.  Channel v. Heckler, 747

F.2d 577, 582 (10th Cir. 1984).  Where nonexertional limitations affect the range of work

of which a claimant is capable, the grids may serve only as a framework to assist in

determining whether sufficient jobs exist in the economy, given plaintiff's limitations and

characteristics.  Gossett v. Bowen, 862 F.2d 802, 806 (10th Cir. 1988).  The

Commissioner does not deny Plaintiff's assertion of law, but she argues that in context

the Appeals Council did not rely upon the grids to direct a finding but used grid Rule

203.29 as a framework to apply the findings of the ALJ and the testimony of the

vocational expert to determine that there are a significant number of jobs available in the

economy of which Plaintiff is capable.

Both parties' arguments find support in the Appeals Council's decision.  As the

Commissioner points out, the Appeals Council explained in its decision that an individual

with Plaintiff's vocational factors and RFC "is found to be 'not disabled' <u>within the</u>

<u>framework</u> of Rule 203.29, Table No. 3 of 20 CFR Part 404, Subpart P, Appendix 2,

inasmuch as there are a significant number of jobs in the national economy."  (R. 6)

(emphasis added).  However, as Plaintiff points out, the "Findings of the Appeals

Council" provide only that the regulations and grid Rule 203.29 "<u>direct</u> finding the

claimant is not disabled."  (R. 7) (emphasis added).

As the Commissioner argues, the context might be read to suggest that the Appeals

Council actually used the grid rule as a framework rather than to direct a finding because

it discussed the ALJ's alternative findings based upon the vocational expert's testimony

regarding jobs available to an individual such as Plaintiff, and proposed to adopt that

alternative finding.  (R. 5, 6).  However, the context might also be read to suggest that the

Appeals Council did not use the grid rule as a framework.  The "Findings of the Appeals

Council" do not reveal that the alternative finding of the ALJ was ever actually adopted.

As quoted above, the Appeals Council stated that the grid rule directs a finding of "not

disabled."  Moreover, the "Findings of the Appeals Council" do not contain a finding that

any representative jobs are available to an individual with the vocational factors and RFC

attributable to Plaintiff, as one would expect if the grid rule were used only as a

framework for decisionmaking.

This ambiguity is rendered all the more confusing by other factors in the context of the Appeals Council's decision. When discussing the ALJ's alternative findings based upon the vocational expert's testimony upon which the Commissioner's argument relies, the Appeals Council stated:

> As stated in the Notice of Appeals Council Action, the Council proposes to adopt the alternate finding by the Administrative Law Judge that the claimant is "not disabled" because she could perform other work existing in significant numbers in the national economy. The Council proposed to rely on different occupations identified by the vocational expert to support this finding.

(R. 5) (emphasis added). However, in the "Findings of the Appeals Council" there is simply no hint that either of these findings was actually adopted by the Council. Rather, the decision reveals that the Council applied grid Rule 203.29 to direct a finding of "not disabled." (R. 7) (finding no. 7). The very next finding is the conclusion that the claimant is not disabled, suggesting that the Appeals Council did not specifically adopt the alternative finding that Plaintiff could perform other representative work. Moreover, there is simply no discussion of "different occupations identified by the vocational expert" in the Appeals Council's decision. In the ALJ's decision, she discussed three representative medium exertion jobs (order filler, laundry worker, and counter supply worker) and three representative light exertion jobs (motel/hotel housekeeping, collator operator, and burr grinder) upon which she based her alternative findings that other jobs exist which Plaintiff can perform. (R. 26). Although the Appeals Council stated that it "proposed to rely on different occupations identified by the vocational expert to support

7

this finding," it did not discuss any different occupations.  It merely repeated the

vocational expert's testimony and the ALJ's findings regarding the six representative

occupations identified above.  In these circumstances, the court cannot ascertain the

rationale or the finding of the Appeals Council in this regard, and remand is necessary for

the Commissioner to explain her decision.

The court notes two other problems in the ALJ's RFC assessment which should be

addressed on remand since the Appeals Council appears to have adopted the RFC

assessed by the ALJ.  First, the ALJ stated that a GAF (Global Assessment of

Functioning) score of 60 assigned to Plaintiff by the Johnson County Residential Center

indicated mild symptoms and that the individual is "functioning pretty well and has some

meaningful interpersonal relationships."  (R. 22) (citing Am. Psychiatric Ass'n,

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)).  However, mild

symptoms and some meaningful interpersonal relationships are associated with a GAF

score in the range of 61-70, whereas a GAF score of 60 is within the range of 51-60

which indicates "**Moderate symptoms** . . . **OR moderate difficulty in social,**

**occupational, or school functioning** (e.g., few friends, conflicts with peers or

coworkers)**.**"  DSM-IV at 32 (underline added, bold in original).

Finally, with regard to Plaintiff's allegations of limitations in mental functioning,

the ALJ stated that she "afforded the claimant's complaints partial credence and,

therefore, limits her to simple work with social limitations."  (R. 23).  However, the

mental restrictions in the RFC assessed were that Plaintiff is "limited to simple, unskilled

work with an SVP of 1 or 2 that is routine and low stress and does not involve significant changes or adaptations, taking initiative or making independent decisions. Moreover, she is limited to work that does not involve meeting production quotas." (R. 20). Nowhere does the RFC mention social limitations, and the decision does not explain how the RFC addresses the issue of social limitations.

**IT IS THEREFORE ORDERED** that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Dated this 31st day of March 2014, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**